{¶ 24} In the decision reached by the majority, I respectfully dissent.
 {¶ 25} Admittedly, the record reflects several different marriage dates including June 16, 1970 (Complaint filed May 1, 2003), June 16, 1972 (Petition in Domestic Violence dated July 19, 1990), and June 15, 1975 (Affidavit of Betty Faison as attached to the Motion to Amend Complaint filed June 25, 2003). However, all dates are prior to the abolition of common law marriage on October 10, 1991. Although testimony was also submitted that Mr. Faison was married to Dorothy Faison in 1955 and divorced on December 19, 1973, by virtue of case number DR043475, and that he then married Joan Faison in November 1998 in Las Vegas, Nevada, this alone does not negate the existence of a common law marriage to Betty Faison in the intervening years. In between the time period of his first divorce and at least his second marriage of record, there is no claim that he was not in a relationship with Betty Faison, but rather the question is whether this relationship amounted to a common law marriage.
 {¶ 26} As set forth by the majority, in order to establish the existence of a common law marriage, there must be clear and convincing evidence of the four factors set forth in Nestor v. Nestor (1984),15 Ohio St.3d 143. In affirming the decision reached by the trial court, the majority found that Ms. Faison failed to present clear and convincing evidence as to the first element, that the parties had an agreement to marry in praesenti or "at the present time." Black's Law Dictionary (5 Ed.Rev. 1979) 712. I disagree.
 {¶ 27} At trial, Ms. Faison moved to submit five items into evidence: (1) a Transfer Certificate of Title showing that the Torbenson Drive property was transferred in the name of "Willie J. Faison" and "Betty Faison," the reverse side of which shows that a mortgage was given by "Willie J. Faison and Betty Faison, h. w." to The Leader Mortgage Co.; (2) a Select Blue health insurance card issued in the name of Betty Faison with an effective date of April 1, 1995, under Willie Faison's account number; (3) a Pennsylvania Blue Shield vision card in the name of Willie Faison; (4) a Petition in Domestic Violence filed by Betty Faison against Willie Faison, and (5) an embroidered jacket bearing the words "Betty Faison, Wife of a Noble."[1] The defense then moved to submit an additional five items into evidence, including Mr. Faison's tax returns for the years 1993, 1994, 1995, and 1997, showing his status as a "single" filer, and an application for pension benefits signed on August 25, 2000, that designated Joan Faison as his spouse.
 {¶ 28} The evidence presented at trial indicates Mr. Faison's awareness that the relationship between he and Ms. Faison was construed as a marriage. He testified that he was aware that Ms. Faison adopted his last name in the mid-1970s, but he failed to mandate that she stop doing so; ultimately, he accepted this fact by advising his insurance carrier to add her to his work policy as "Betty Faison." Although he now claims this gesture was fraud, based on the insurance card submitted into evidence, she remained insured under his policy with a last effective date in 1995 — an indication weighing in favor of a common law marriage as opposed to a decades-long fraud.
 {¶ 29} In addition, Mr. Faison testified that the embroidered jacket bearing the inscription "Betty Faison, Wife of a Noble" was made by a now-deceased friend of his. While great emphasis is placed on the parties' separate bank accounts and separate credit card accounts, the mere existence of joint accounts is not an indication of a marriage. Moreover, while some tax records were submitted into evidence noting Mr. Faison's marital status as "single," the submission of only four tax returns bearing this designation in an over eighteen-year period is not dispositive.
 {¶ 30} Willie and Betty Faison lived together for approximately eighteen years, they co-signed a mortgage together as husband and wife, they shared medical benefits as husband and wife and Betty Faison adopted Willie's name. Further, an admitted friend of Mr. Faison prepared clothing signifying the couple's relationship. Finally, when domestic violence charges were brought in common pleas court, they were brought under claims of marital abuse. Both parties testified as to the rings that were given, the dates the rings were given, and the details of the ceremony.
 {¶ 31} For these reasons, I believe that the elements necessary for a common law marriage have been met. I agree that the defense of laches would properly defeat such a claim, however, this defense was never properly pled. Laches is an affirmative defense and is waived if not raised in the pleadings or in an amendment to the pleadings. Civ.R. 8(C). See, also, Jim's Steak House, Inc. v. Cleveland, 81 Ohio St.3d 18,20, 1998-Ohio-440. The trial court found that "[t]he Defendant raised the defense of laches." (Magistrate's Decision at 5), but such is not the case. A review of the record indicates that this defense was never raised in Mr. Faison's Answer or in any subsequent pleading filed with the court. While Ms. Faison alerted the court to this error in her objections to the Magistrate's Decision, Mr. Faison again failed to address the issue, claiming only a failure to meet the elements of laches, and not addressing his failure to properly plead the defense. Therefore, Mr. Faison's failure to raise laches as an affirmative defense in his pleadings has acted to waive this defense.
 {¶ 32} For the foregoing reasons, I would reverse the decision of the trial court.
[1] We note that Plaintiff's exhibit 5 was admitted into evidence and that the defense stipulated to the embroidered wording, but that the jacket was not submitted into evidence on appeal.